## TAYLOR PROVISION CO. v. GOBEL.

(Circuit Court, E. D. New York. August 15, 1910.)

1. TRADE-MARKS AND TRADE-NAMES (§ 7*)—SUBJECTS OF VALID TRADE-MARKS —PORK ROLL.

The words "Pork Roll" or "Roll of Pork," not registered, could not be the subject of a valid trade-mark unless they were so well known and thoroughly recognized by the public for a sufficient length of time to be a distinctive use of the words.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 11; Dec. Dig. § 7.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 95*)—UNFAIR COMPETITION—PACKAGES —PRINTING.

Where complainant put up an article of food made of pork, known as "Pork Roll," packed in a cylindrical cotton sack or bag, marked with outline letters, defendant could not be guilty of unfair competition in using a cotton bag and similar letters for his product so as to entitle complainant to an injunction on a preliminary hearing because of the similarity of the letters, where it appeared that they were used to prevent the ink from striking through into the product.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

3. TRADE-MARKS AND TRADE-NAMES (§ 95*)—IMITATION OF PACKAGE—ARTICLE COPIED—PRELIMINARY INJUNCTION.

Imitation of complainant's package in the sale of pork roll would be sufficient to entitle complainant to a temporary injunction only in case complainant could show clearly that the article copied was of a specific make possessed of a valuable trade reputation, and of · an individual peculiarity sufficient to identify it as an article of trade rather than a common product of a certain kind, for which there was a general demand.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 95*)—PACKAGES—SIMILARITY—TEMPORARY INJUNCTION.

Where complainant's evidence did not show that the words "Pork Roll" as used by him, or "Taylor's Pork Roll," in connection with the sale of pork in cylindrical cotton packages, had acquired a distinct meaning in the eyes of the public for the particular article of food described before defendant put his product on the market in similar packages, complain-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ant was not entitled to a preliminary injunction to restrain defendant's use of such packages and dressing.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*]

In Equity. Action by the Taylor Provision Company against Adolph Gobel for trade-mark infringemeht. Application by complainant for temporary injunction. Denied.

Durand, Mahony & Kreischer, for complainant.

Einstein, Townsend & Guiterman, for defendant.

CHATFIELD, District Judge. The complainant is successor to one John Taylor, who conducted a provision business for a considerable time and placed upon the market a food article made of pork, packed in a cylindrical cotton sack or bag in such form that it could be quickly prepared for cooking by slicing without removal from the bag. This preparation was known as "Taylor's Prepared Ham," but with the passage of the pure food law by the Congress of the United States it became necessary to change the label of this article in order to avoid a violation of the statute, as it did not consist of ham. The complainant therefore adopted the name "Pork Roll," and has had large sales of the article under the name of "Taylor's Pork Roll," or "Trenton Pork Roll," the preparation still being sold in cotton bags, and having red letters in outline printed upon the bags, with a detachable paper label, fastened by a rubber band, which paper label is in the form of the trade-mark registered by the complainant on the 31st day of October, 1906. A similar label was also registered on March 19, 1907.

The defendant is a manufacturer of meat products, and has placed upon the market a similar article of food, made of pork, resembling the Taylor product in its preparation, taste, and use. The defendant's product is evidently planned to supply the same trade as the complainant's product, and it is apparent from the affidavits that persons intending to buy one might be given the other, and even might be deceived thereby, as the defendant's product is marked "Roll of Pork," and also has an oval detachable label, fastened with a rubber band upon the outside of the cotton bag, with red outline type used for the marks upon the bags.

The complainant has brought an action, alleging substantially unfair competition and also a violation of the trade-mark label, but, inasmuch as the use of the words "Roll of Pork" (in a manner which the complainant alleges is intended and is likely to injure his business in the sale of his "Pork Roll") is made the basis of the action, and as neither the words "Pork Roll" nor "Roll of Pork" are registered by themselves, we can here disregard any question depending solely upon possible infringement of trade-mark. In fact, unless so well known and so thoroughly recognized by the public as to be a distinctive name for a sufficient length of time, such words could not be the subject of a valid trade-mark. The Thaddeus Davids Co. v. Cortland I. Davids et al. (decided April 18, 1910, C. C. A., Second Cir.) 178 Fed.

801. It might further be noticed that in registering this trade-mark the complainant registered the label for a pork roll, the words "Pork Roll" evidently being understood to mean a roll made of pork, and to be an article of common usage rather than an object needing definition or distinctive identification.

There would seem to be no reason why the defendant should on preliminary hearing be held guilty of unfair competition for using a cotton bag or red outline type, instead of solid letters upon these bags. In the absence of proof to the contrary, the affidavits seem to satisfactorily show that the use of bags or sacks for the packing of such products, of outline type so as to prevent the ink from striking through as when impressed in solid letters, and of red ink in order that any possible traces might not show upon the product, are all old and frequently used for similar purposes. Such marks upon the bags are required under the pure food law. The loose label, fastened with a rubber band, is not of itself a trade device of the complainant, and the only basis upon which the complainant would seem to have any reason to charge the defendant with unfair competition would be upon the allegations that the defendant was putting out a similar article to meet an identical demand that people ignorant of the precise name or careless in purchasing might be deceived, and that the defendant makes it possible for such deception to be so intentionally and unwittingly committed against customers.

Such imitation would be sufficient for the issuing of a temporary injunction if the complainant could show clearly that the article copied was a specific thing, possessed of a valuable trade reputation, and of individual peculiarity sufficient to identify it as an article of trade rather than a common product of a certain kind, for which there was a general demand. Yale & Towne Mfg. Co. v. Alder, 154 Fed. 37, 83 C. C. A. 149. The use of the cotton bag, of the red ink type, the detached label, and general likeness in the product itself and in the methods of packing and marking make it likely that the complainant would prevail upon final hearing, if the words "Pork Roll" as used by him, or "Taylor's Pork Roll," could be shown to have acquired for the particular article of food so described, a distinctive meaning in the eyes of the public, before the defendant put his product on the market, and unless the article so packed and marked were one of free and common use at earlier dates than the imitation.

Many cases can be cited in which trade-names have been held not to be ordinary terms and to be identified with a particular product sufficiently not only for the purposes of registration as a trade-mark, but also for the purpose of calling the purchaser's attention to some particular article merely by the use of the name; and imitation thereof has been held to be with wrongful intent and not for legitimate competition. Such a name might not only call attention to some particular article, but might be so well advertised as to give a trade-name or popular appellation to a firm's entire products, and imitation of such name, with the intent to put a product upon the market which would take the place of the original, would be unfair competition. But in the absence of conclusive proof that the words "Pork Roll" had ac-

quired more meaning than the words "Pork" and "Roll" would convey to the ordinary purchaser, and without testimony that the words "Pork Roll" are so well known as identifying the particular product of the complainant that a like phrase or name should not be used by any merchant or butcher who wished to put a preparation of pork upon the market for this particular kind of trade, it would not seem that a preliminary injunction should issue.

As the matter stands upon the affidavits, the value of the business of the complainant rests upon the popularity of the name "Taylor," due to the reputation which that particular product has because of appealing to individual tastes. There is no evidence that the defendant's product is similar to the complainant's roll and to nothing else; that is, that no similar product has been commonly made by the trade, and the court is not prepared to enjoin an apparently solvent and responsible defendant merely because careless or unscrupulous dealers might substitute one product for the other. If the proof showed that this was the purpose of placing the product upon the market, such relief ought to follow; but that can hardly be determined upon preliminary hearing upon the situation here presented.

The motion will be denied.